3-16-03-34 Police State of Illinois, Appalachia, by Mark Osdell v. Timothy William Foreman of Pallant, by Ron Colbuck  Mr. Foreman is convicted of possession and control of substance with intent to delude the public. He was sentenced to nine and a half years in prison. Our field raises two issues before this court. Whether evidence of prior drug offenses was improperly limited to whether he was properly sentenced as a Class X offender. Today, I would like to start by discussing the other crimes issue and, if time permits, the A portion of the sentencing issue. As to the first issue, the question here is whether the prejudicial effect of the other crimes evidence substantially outweighed its probative value. In a house at 1015 East Republic in Peoria, the police found cocaine and a number of items that showed an intent to deliver that cocaine. Expert testimony explained the evidence to the jury. The police found 3.1 grams of cocaine. The police officer testified that this was more than a user would possess. The police found a plate with cocaine residue on it. It looked like a cutting agent. The expert testimony indicated that sellers would chip off portions of the cocaine and mix it with cutting agent. Police officers found a scale for weighing that substance. Police officers found a number of baggies. A number of them had their corners torn off. Expert testimony indicated that sellers would take two-tenths of a gram chunks of cocaine, put it in those corner baggies, spin it, tie it up, and sell those for $20 apiece. Police officers also found $700 of cash at the residence. $680 of that was in $20 bills. The amount the officer testified was a typical purchase amount. No user paraphernalia was found at the residence. All of this evidence showed a sales operation. It was readily apparent that whoever possessed the cocaine at 1015 East Republic did so with the intent to deliver. Nevertheless, even though it sat through the first trial where it heard all of this evidence, the circuit court allowed two other crimes incidents where a defendant possessed cocaine allegedly with the intent to deliver in order to show that whoever possessed that cocaine at the residence intended to deliver it. The court allowed evidence about an incident in 2000, 12 years before the incident, instant offense. There, the defendant was arrested with 10 bags of cocaine, 5 bags of cannabis. Prior to the first trial, however, the court said that the evidence regarding the cannabis was not relevant, barred that from being admitted. Nevertheless, the state elicited testimony in both trials about the cannabis. The court also allowed evidence that the defendant possessed a bag containing a number of bags of cocaine in a truck that was searched the same day as the offense. Neither of these instances were very probative of the intent, where overwhelmingly appropriately admitted evidence already showed that whoever possessed that cocaine did so with the intent to deliver. The issue in this case was whether the defendant possessed that cocaine at 1015 East Republic, not whether whoever possessed it intended to deliver it. Furthermore, since there is such a limited scope of value, the other crimes evidence was incredibly prejudicial. In the 2000 case, the defendant was arrested with 10 bags of cocaine and 5 bags of cannabis. The cocaine weighed 3.6 grams, an amount that was even more than the cocaine that was found in the house, which the actor testified was more than he usually possessed. And again, the state brought in evidence related to cannabis, which the court had barred prior to the first trial. And in rebuttal, the state admitted evidence that on the same day that the police found the 3.1 grams at the house, found more than twice that amount, separated in 28 baggies in a truck right around the corner from where the defendant was arrested. Further compounding the prejudicial effect of this evidence, the state called a chemist to testify that the evidence recovered in the 2000 case was indeed cannabis, weighed 11.9 grams, and indeed cocaine, weighed 3.6 grams. And the state again brought in a chemist to testify regarding the incident that occurred on the same day, testified that 28 baggies contained cocaine. They weighed 7.2 grams, which is twice as much as the amount that was recovered from the house. And as you know, the nature of the substance was never contested. Yeah, and there was never a concession either from the defendant that, you know, what you're saying, he didn't expressly attack the tie-in with the intent to deliver, but there was never a concession that there was an intent to deliver. There was never a specific concession to that element of intent. There was never a stipulation that the defendant, or whomever possessed this intent to deliver. But prior to the second trial, the court heard all the evidence in the first trial. Prior to the second trial, the plaintiff said, I'm just challenging the possession. That's what was said, but there was never a concession on that point. I mean, as the evidence is going in on the trial. Well, the state certainly does have to prove that element of the offense, the intent of the offense. So it still is required to prove that? The state still had to prove it? Oh, yes, absolutely. But as the reform maintains in its brief, the evidence found in the house is more than sufficient to prove that. And then the state admits in its brief that there was uncontested overwhelming evidence of intent to deliver found in the house. So the question is whether those other offenses, whether they're sufficiently probative, whether the prejudicial effects substantially away. It always seemed to me that this kind of question is when it's enough enough, right? I think I agree. I agree, absolutely, Your Honor. And I think what was presented to the state's chief with regard to what was found at the house was enough. That was enough to show intent to deliver. When you bring in all these items, the amount of cocaine that was possessed, the number of baggies, the corners missing on those baggies, the expert testimony stating that this is how they sell cocaine, this is how they package it, this is how they twist it up, this is how they sell it. They sell it for $20 apiece, there's all these $20 bills laying around, there's a scale for weighing down the cocaine. That was more than sufficient. They brought in an expert to testify that this is how sellers work. This is not the amount that a user would possess. And no user paraphernalia was found at the house. So it's not a question of whether the state can admit this evidence to additionally show intent. It's whether it's admissible under Rule 403, whether it's the prejudicial effect of these additional other crimes evidence showing other instances where people possess cocaine outweigh the appropriate value. Here Mr. Foreman maintains that it does when you have this amount of evidence found in the house. Now the standard is abuse of discretion, right? That's actually correct. It's a harder standard to... It's a little bit higher of a standard, but here the judge sat through the first trial. He knew all this evidence was coming in. He knew the defendant never challenged the intent of whoever did that first trial. And before that second trial, the defendant said, I'm just challenging possession. The judge knows what evidence can come in. In that case, that's an abuse of discretion to allow that additional evidence. Well, the first trial, the hung jury wasn't. That's accurate, Your Honor. I mean, it wasn't a conviction, it was hung jury. With all that evidence in. With all that evidence in because the question was who possessed it. The jury was hung because they couldn't determine who actually possessed it. And there was some differences between the two trials. Mainly with regards to the other crimes evidence regarding the truck. The state in the first trial admitted that in its case in chief as part of the continuing narrative of the offense. It was all under the same charge. But the incident involving the truck, and that was disputed. The defendant highly contested that issue. Contested the credibility of the police officers who obtained the keys to that truck. Who searched that truck. But that was in the first trial. That was in the first trial. Right, right. But in the second trial, it didn't come in during the state's case in chief. What happened was the state brought it in as rebuttal evidence in the second trial. Even though it didn't rebut anything the defendant brought forth in its case in chief. And then at that point, the defendant doesn't really have any challenge to it. The court offered it as other crimes evidence. He couldn't bring in, you know, the officer who took the keys on him. And show the jury that this officer has credibility problems. So by that time, it was too late at the second trial for him to do anything. It was overly prejudicial, as I pointed out, as I stated earlier. The state argues that Watkins is controlling in this instance. And Watkins is vastly distinct. The state admits that as much in its brief, page 33. There, only the certified copy of one prior conviction from a 3- or 4-year-old case was admitted. Here, there are two prior bad acts that were admitted. Neither are good for convictions. The testimony about these two acts includes over 50 cases of transcripts. One of those was a 12-year-old case that was brought in, in this case. As opposed to Watkins, who was just 3- or 4-years-old. And in this case, I have not found any other case where this happened. The state's attorney, the chemist, testified that the drugs were, in fact, cocaine. And the amount of their substance, how much they weighed. There, in Watkins, the state abided by the circuit court's ruling. But here, the state admitted evidence regarding the cannabis that the trial judge had said was irrelevant prior to the first trial. And the portion of the evidence related to the truck was brought out in rebuttal in this case. That did not happen in Watkins. It was brought out in the state's case-in-chief, just a certified copy of the conviction that ended the state's case-in-chief. Here, the judge knew of the prior evidence because there were two trials. And in Watkins, the judge instructed the jury on the element of intent. Here, the judge instructed the jury on intent and knowledge. And the knowledge, in this case, would go to the possession. Whether he knowingly possessed the substance of 10-15 East Republic. So that the jury receiving these instructions would say, Okay, we can use these other crimes to determine whether he possessed that substance of 10-15 East Republic. These other crimes show he's a drug dealer. Of course a drug dealer is going to possess those items. That's what he does. So it's simply, you know, the jury being instructed is they can consider that for knowledge. It's going to consider that to determine whether he possessed that item. Even though the question of possession, it was not instructed on possession. It was just merely admitted for intent. Therefore, Watkins is distinguishable. In sum, Your Honor, the prejudicial effect of the other crimes evidence substantially outweighs the pro-the value. And it should not have been admitted in this trial. Turning then to the second issue, the defendant was not eligible to pass that sentence here. Here, I'd like you to focus on the first portion of the argument. The straightforward application of the recidivism statute. Section 5-4.5-95 of the Unified Court of Corrections provides an important part that's most important. When a defendant is convicted of a Class I or Class II felony, after having twice been convicted in any state or federal court of an offense that contains the same elements, as an offense not classified in Illinois as a Class II or Class III felony, that defendant shall be sentenced as a Class X offender. The prior offense at issue here is an enhanced driving while license revoked offense. Driving while license revoked is a misdemeanor. It can be enhanced based on prior convictions. It can be enhanced all the way up to a Class II offense. However, the prior convictions are not elements of the offense. They are sentencing factors. Therefore, a defendant was not convicted of an offense that has the same elements as a Class II or greater class felony. It is not subject to a Class X sentence in this case. The state argues that the defendant's 2013 conviction for driving while license revoked, where he was apparently sentenced as a Class X offender, made him eligible for a Class X offense in this case. The recidivism provision requires that the third felony, which would be this case, had to have been committed after conviction on the second case, which would be the 2013 case. This offense was committed in 2012. Obviously, the 2013 case of conviction was before this commission of the incident offense. The conviction on the Class X felony was had after he committed this offense. So it doesn't line up in the proper way. So it's an after. It's after he committed that. After he committed the one that's on appeal now. Yes, this one would be the third one. So he's not eligible for a Class X sentence for a Class X offender in this case. Therefore, this court should demand that he be sentenced in the circuit court in the correct range of the Class I felony. Any other questions? In conclusion, Your Honor, the circuit court harmoniously allowed the jury to hear evidence of two prior drug-related offenses to show intent, where the evidence of intent was overwhelming, and the court harmoniously sentenced the defendant as a Class X offender. Therefore, the defendant respectfully requests that this Honorable Court reverse his conviction and demand the case for the proceedings as argued in Issue 1, or remain in the matter for resentment as argued in Issue 2. Thank you, Your Honor. Thank you, Mr. Collett. Mr. Rostow? May it please the Court? Counsel. The defendant serves the trial judge by allowing people to present other crimes as evidence. The defendant possessed five bags of cannabis and ten bags of cocaine 12 years prior to this offense. Can I interrupt you for a second? Could you address first, if you wouldn't mind, the order of the prior convictions that were used? You know, the last part of the argument. I was going to confess, Your Honor, that 2013, if that's what you're alluding to. The question is, I misinterpreted the statute when I was going through this, and I was thinking of it as a third conviction rather than the third crime, which is the way the statute actually reads if you read into it, and I heard in saying that the 2013 conviction was applicable, but it is not. So what's your position on that? Then you're conceding error on the second argument? No, sir. We're saying that the 2000 to 2009 convictions are applicable under the statute. They're both Class I and Class II felonies, and therefore the defendant falls under the statute, so it's a proper sentence. And so it's still a proper Class X is your argument then? Yes, sir. Yes. Okay. But you would draw that part of your argument that dealt with the order? Yes. The trial just considered the 2013 committing improperly, and so I agree that I misinterpreted the statute, and the 2013 crime is not applicable. So which offenses are you saying puts him in Class X? Both of the – well, he actually has three convictions. The 2000 conviction on the car accident. Well, you're already saying the other ones after the fact. Which are the two you're saying that moves him into Class X, or which ones move him into Class X? Both of the 2000 convictions and both of the 2009 convictions will put him there because they are both Class II felonies, and so that gives him actually three felonies that put him under the habitual offender statute. Okay. Getting back to the first issue, people have known that they also wrongly argued that the video of the defendant's 2000 arrest had not been destroyed. In fact, it was discussed in the first trial, and people agree that the defendant could not have used that video to challenge Officer Garner's testimony at the second trial. The defendant was charged with knowingly and unlawfully possessing with the intent to deliver one gram or more, but less than 15 grams of the substance containing cocaine. The defendant had to prove the defendant had knowledge of the presence of the narcotics, the narcotics were in the defendant's immediate possession or control, and the defendant intended to deliver the narcotics. Therefore, the question of the defendant's knowledge of and intent to deliver the cocaine was at issue at trial. And other crimes' evidence may be irrelevant to show intent and knowledge. Rule of Evidence 404B states that other crimes' evidence is not admissible as character evidence, but is admissible for, in part, proof of intent and knowledge. The defendant lived with Tenique Henderson, who had a childhood defendant. Police found in their shared residence 3.1 grams of crack cocaine, baggies, tear-offs, a tear-off with the defendant's thumbprint on it, a digital scale with $700 in cash and denominations used in cocaine sales, a plate with cocaine residue on it, and evidence showed that crack cocaine was often cut on plates like that, and cutting agents were found in a box that also held the defendant's ID. Police did not find any evidence that the defendant had a job. No use or paraphernalia was found in the house, and Henderson later pled guilty to possession of drugs found during the search. This evidence shows that the defendant and Henderson, two of them, possessed the cocaine with the intent to deliver it. The reply brief provides a very good summary of the evidence. He admits whomever possessed the cocaine possessed it with the intent to deliver it. The defendant admits his fingerprint was found on the tear-off, and he was not eliminated as a person who left his fingerprint on the bottom of the plate. He claims he could have contacted the items before they were used for legal purposes. The evidence must be viewed in the light of prosperity for the people, and in that light, the defendant pushes items with the intent to deliver the cocaine. Ms. Henderson testified for the defense that she told Officer Lane the location of the cocaine and that it was hers for personal use. Captain Marion testified in a rebuttal that Henderson told Officer Lane that nothing illegal was in the house, and that anything illegal was counted did not belong to her, and Henderson did not show any officer the location of the cocaine or claim it was hers. Henderson also testified she showed Officer Lane the location of the Tahoe and gave him the keys. Captain Marion testified in a rebuttal that Henderson did not show Lane the location of the Tahoe, but Henderson said the defendant had driven the Tahoe to meet his parole officer and Lane located it one block away from the parole officer. Ms. Henderson's testimony was shown not to be credible. Evidence was admitted that 28 bags of cocaine were found in the Tahoe and the defendant drove to the parole officer, and the judge issued a limiting instruction that the jury could only consider this for the purpose of intent and or knowledge. In his reply, the defendant asserts that prior to his first trial, the trial judge admitted of the crime's evidence to show the defendant's intent to deliver it and it would be allowed as rebuttal if the defendant claimed he had no knowledge of what cocaine was. The defendant, of course, did not make such a claim, and the defendant asserts the trial judge allowed the evidence to be admitted only to show intent but not knowledge. In addition to the intent to deliver charge, the defendant was charged with simple possession of less than 15 grams of cocaine, which required people to prove that the defendant knowingly possessed a controlled substance. The defendant's knowledge of cocaine was an element of the possession charge. The defendant's theory was that he did not possess cocaine in the house. Therefore, the defendant was not prejudiced by any instruction that allowed the jury to consider evidence that the defendant knew what cocaine was. The instruction properly allowed the jury to consider the evidence admitted under Evidence Rule 404B that the defendant possessed a cocaine package for sale in 2000 and he possessed a cocaine indicator. In the title, on the issue of the defendant's intent to deliver the cocaine, found in that residence, he shared it with Edmund Henderson. In his reply brief, the defendant claims the jury would have understood the instruction as an indication to consider the prior incidents to show the defendant knew that cocaine was in the house, but this is an irrespective option. Nothing is foretold. In his reply brief, the defendant claims the only issue of contention for the defendant possessed of cocaine in the public residence, the fact that the defendant only contested his possession of the drugs, did not preclude the people from having to prove that the defendant also possessed the drugs with the intent to deliver its charge. The defendant, in particular, intended to deliver the cocaine was not a foregone conclusion. And the people had the burden to prove that charge despite the defendant's theory of the case. As the court may find that the trial judge abused his discretion by allying the other crime's evidence and that the limited instructions did not spur the error, the people asked the court to find that any error was harmless, but the uncontested evidence proved the defendant possessed the drugs with the intent to deliver. Regarding the second issue, the defendant argues that if a driving while license revoked 15 of seven subsequent violations of class 3 felonies should not qualify one for class 6 sentencing under the official offender statute. The defendant acknowledged that he was convicted in 2000 for class 1 possession of a controlled substance. He also acknowledged that he was twice convicted in 2009 for 15 of subsequent violations of driving while license revoked, which the defendant admitted was a class 2 felony under section 6303D-5. Thus, the defendant admitted he had one class 1 felony in 2000 and two class 2 convictions in 2009. These convictions put the defendant squarely under the official offender statute. The people will stand on the brief for all of their arguments at this point. The court rejects the defendant's rationale that the elements of the 6303D-5 all had to be felonies. That is not accurate. For instance, battery is a class A misdemeanor. The elements of aggravated battery include a misdemeanor battery plus enhancing elements such as a great bodily harm, theft of a victim, or that it was committed on public property. Under the defendant's rationale, no aggravated felony that has a misdemeanor as an element could serve as a prior conviction for class 1 and 2 felon for the official offender sentencing. We ask the court to reject that rationale and we ask the court to fund the defendant's convictions themselves. Any questions? Thank you, Mr. Astell. Mr. Kollett? Thank you, Anna. As to the second issue, the state acknowledges that the class X conviction has no bearing on this case. So, which relied on two 2009 convictions, both of them are for felons driving a law-licensed revoke. Both of them are based on the 15th and 16th driving a law-licensed revoke offenses. Neither of those, the enhancing factors are the prior convictions for the driving a law-licensed revoke. Those are not elements of the offense. For people who are spookus and under the Unified Code of Corrections, because they are not elements of the offense, he's not eligible for that. What are the elements of the offense? The elements of the driving a law-licensed revoke is driving a law-licensed revoke. It's a misdemeanor offense. It's only enhanced to a felony based on your prior revocations. Those prior revocations are not elements of the offense according to the Illinois Supreme Court. Because they're not elements of the offense, he's not eligible for class X sentences. The state posits a hypothetical that the state unit battery, although to an aggravated battery, would not qualify. An aggravated battery, as the state pointed out, includes an additional element, rape, bodily harm, or whether it's on a public way. The holding in Lucas pertained because there was a question to whether the state had proven the underlying felony in that case to support the armed violence conviction, right? That's correct, Your Honor. Okay, so it doesn't – aren't you trying to push Lucas further than the holding in Lucas? Not at all, because the state couldn't prove those underlying factors for prior conviction because it's not an element of the offense. It's just a simple question of whether that prior conviction is an element of the offense. But that simple interpretation would make the statute sort of nonsensical, wouldn't it, to apply that? Because Lucas was in a specific problem that was in the Lucas case. That's not some overreaching kind of statement that it has to always contain the same elements. Well, I think we're looking at two different sub-issues, I should say. Whether the prior conviction regarding well-licensed revolt is under Lucas clearly an element of the offense. And in Lucas, the state was not able to prove that to the jury because under the Code of Criminal Procedure, it was not able to prove that to the jury because it was not an element of the offense. It's solely an enhancing factor. So then you move on to determine, look at the Unified Court of Corrections. And because it's not an element of the offense, it does not classify. It's a Class II offense, but it does not classify for Class X sentencing. Am I clear enough? I understand what your position is, but it would seem to me then that you'd be excluding with the intent of the legislature with regard to the habitual criminal and the enhancement to a Class X would be... No, I don't think so. I think, I mean, there's different ways the legislature could have done it. They could have said that in the recidivism statute, clearly they state the elements of the offense. But in the extended term sentence, they rely on the classification of the offense. So the legislature, they know how to differentiate between the two. In the extended term statute, it says, whether a defendant is convicted of any felony after having been previously convicted in Illinois or any other jurisdiction of the same or similar class felony or greater class felony, that would include Class II driving while licensed to revoke. But since the elements of driving while licensed to revoke a Class II offense relies solely on those prior convictions, it does not qualify under the recidivism statute. And going back to the first issue on appeal here, the state argues that any error was harmless. The question here was who possessed the cocaine. There was a fingerprint found on the magazine. There was a partial print, and they could not say it was not found on the bottom of the plate. The defendant lived there. These are innocuous objects unless they're used for illicit purposes. He could have tested for diabetes with that plate at any time. There's no indication here they did not find it on the person. They did not find it in his clothes. They found it in a child's jacket in the closet. They did not find his clothes in that closet. So there was a question. I mean, Henderson testified that the cocaine was hers. The defendant didn't know anything about it. There's a credibility question for the jury to determine. And here on appeal, the state's argument is harmless. It's their burden to show it's harmless beyond a reasonable doubt. Based on that evidence, bringing in these other prior sentences and telling the jury that they could use these priors to, as it shows the defendant's knowledge, in other words, possession, substantially prejudiced the defendant in this case. And if there are no further questions? No. What do you mean by knowledge? Explain that. Prior to the first trial, the judge said this can come in, these other offenses can come in to show the defendant's knowledge, or can come in to show his intent. And if the defendant brings forth a defense and says that he doesn't know what cocaine is or he doesn't know what cocaine looks like, then the state can bring in a sentence to show his knowledge. That's prior to the first trial. Prior to the first trial. That never happened, though. He never denied knowing what cocaine looked like, having knowledge of what cocaine is. I think that's why the judge said if he testifies that he doesn't know what cocaine looks like, then I'm going to allow this to come in to show his knowledge, that he previously had this substance so he knows what it looks like. That never happened, though. But the judge still instructed the jury as to if it can consider the prior offenses as it shows the defendant's intent and his knowledge. So the jury was also instructed, of course, because it's a possession case, that he knowingly possessed the cocaine. The jury would take that instruction and likely infer that, well, we can use those prior offenses to show that he knew the cocaine was there. In other words, to show that he possessed that cocaine. Rather than what the circuit court judge said he would allow for, which is if the defendant says he doesn't know what cocaine looks like. So the jury was never instructed that this is coming in because he testifies that he doesn't know what cocaine looks like. He knows what cocaine looks like. That's why the prior offense is in there. The jury simply holds it. It goes to his knowledge. And what the jury would infer from that is it goes to his possession. Thank you. Thank you both for your arguments here today. This matter will be taken under advisement and a written decision will be issued to you as soon as possible.